UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL COVALESKI,<br>    Plaintiff, | :<br>:<br>: | |
| v. | : | 3:14-cv-01193-WWE |
| MARK J. GRANAUDO,<br>    Defendant. | :<br>:<br>: | |

### MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that defendant deprived him of his right to be free from unreasonable force in violation of the Fourth Amendment to the United States Constitution when defendant handcuffed plaintiff incident to arrest on February 11, 2014. Defendant has moved for summary judgment. For the following reasons, defendant's motion will be granted.

### BACKGROUND

The following facts are gleaned from the parties' statements of fact, affidavits, deposition transcripts, and other exhibit documentation.

On February 11, 2014, plaintiff resided at 43 Asnuntuck Street, apartment # 3, in Enfield, Connecticut, with his partner, Alverna Heath, their two minor children, and a roommate, Gregory Squazza.

On that date, at approximately 9:00 p.m., defendant, an officer of the Enfield Police Department, responded to plaintiff's residence in connection with an emergency medical assistance call for Ms. Heath. Upon his arrival, defendant observed that members of the Enfield EMS were already assisting Ms. Heath, who at the time was located in a bedroom shared by Ms. Heath and plaintiff.

Defendant entered the bedroom and observed two handguns located on a shelf. Upon

examination, defendant discovered that both handguns were loaded and one had a seventeen (17) round magazine inserted into the magazine well. Ms. Heath told defendant that the two handguns belonged to plaintiff. Defendant also learned that the two children residing at the house frequently entered the bedroom to watch television. The locking mechanism on the bedroom door was broken, so the room could not be secured.

Shortly after Ms. Heath had been transported to a hospital by the EMS and before defendant was able to complete his investigation, plaintiff arrived at his residence.

Plaintiff admitted ownership of the handguns and acknowledged that the guns were registered but that the high capacity magazine was not.

Upon consultation with his supervisor, Sgt. Marianne Christensen, defendant determined that there was probable cause to arrest the plaintiff on charges of two counts of risk of injury to a minor in violation of Connecticut General Statutes § 53-21; two counts of reckless endangerment in the second degree in violation of Connecticut General Statutes § 53a-64; and possession of a large capacity magazine in violation of Public Act No. 13-220.

Defendant explained the violations to plaintiff and placed him under arrest. Plaintiff was cooperative during the arrest and voluntarily placed his hands behind his back in order to be handcuffed.

According to plaintiff, once he was handcuffed, his hands were resting behind his back at a height approximately on top of his buttocks. Plaintiff asserts that despite notifying defendant of his recent shoulder surgery, defendant raised plaintiff's arms by several inches in order to adjust and double lock the cuffs, causing pain and injury to plaintiff's right shoulder.

Double locking the handcuffs is a standard handcuffing technique that prevents the handcuffs from tightening further, preventing potential nerve damage or loss of circulation.

During and after the time that he was handcuffed, plaintiff never complained of discomfort or pain. Throughout the encounter, defendant was polite and courteous with plaintiff. Aside from the actual act of handcuffing, defendant had no other physical contact with plaintiff.

Defendant graduated from the Connecticut Police Academy in 2008, where he was educated as to proper handcuffing technique, and he received retraining in 2010, 2012, 2014, and 2015.

After plaintiff had been handcuffed, Officer Jamie Yott, a backup officer at the scene, transported plaintiff to the police department for processing. Plaintiff was processed by Community Service Aide ("CSA"), Matt Bilgen. Plaintiff's interactions with CSA Bilgen were recorded on a surveillance camera; the video recording shows the plaintiff moving his arms freely and with no indication that he was experiencing any sort of physical pain. At no time did the plaintiff complain to CSA Bilgen about any physical pain or discomfort, and, as a result, no corresponding notation was made on the arrestee data sheet completed by CSA Bilgen for the plaintiff. At no time did plaintiff request emergency medical assistance from any of the officers or CSA Bilgen.

Plaintiff did not seek any medical treatment for the injuries he is claiming in this case until seven (7) days after his arrest, when he appeared on February 18, 2014, for a previously scheduled appointment.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not

differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**Qualified Immunity**

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To lose immunity, an official must violate a right, the contours of which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The Supreme Court has repeatedly stressed the importance of resolving the qualified immunity determination at the earliest possible stage in the litigation. Hunter v. Bryant 502 U.S. 224, 227 (1991).

"[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008).

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham 490 U.S. at 396.  Here, where plaintiff never complained of discomfort or pain, it was objectively reasonable for defendant to believe that handcuffing plaintiff in the customary manner upon plaintiff's arrest did not infringe on plaintiff's Fourth Amendment rights.  See Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995).  Indeed, without indication of distress, there was no way for defendant to determine that the minor amount of force he employed during handcuffing was objectively unreasonable.  Under the circumstances, "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice."  See id.  Accordingly summary judgment will be granted in defendant's favor.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk is instructed to close this case.

Dated this 2nd day of September, 2016, at Bridgeport, Connecticut.

        /s/Warren W. Eginton
       WARREN W. EGINTON
       SENIOR UNITED STATES DISTRICT JUDGE